UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

WALTER WENGER,

                              Plaintiff,

                                                          5:14-CV-00885
v.                                                        (DNH/TWD)

NEW YORK STATE DEPARTMENT OF HEALTH,
et al.

                              Defendants.
_____

APPEARANCES:

WALTER WENGER
Plaintiff *pro se*
4413 Whitman Road
Canastota, New York 13032


**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

<u>**ORDER AND REPORT-RECOMMENDATION**</u>

I.       **FACTUAL AND PROCEDURAL BACKGROUND**

        The Complaint of *pro se* Plaintiff Walter Wenger was received for filing in the Northern

District of New York on July 18, 2014, along with an application to proceed *in forma pauperis*.

(Dkt. Nos. 1 and 2.)  By Order of October 27, 2014, the Court granted Plaintiff's application to

proceed *in forma pauperis*.  (Dkt. No. 4.)

        Although not indicated in the caption, the factual allegations, the claimed injuries, and the

relief sought, show that while Plaintiff has asserted limited claims on his own behalf, he has

brought this action primarily on behalf of his son Steven Joseph Wenger ("Steven"), in his

capacity as Steven's court appointed guardian.  (*See generally*, Dkt. Nos. 1 and 4.)   Plaintiff was

appointed sole guardian of Steven's person and property in 1998 after Steven received a traumatic brain injury in a 1991 automobile accident at the age of fifteen. (Dkt. No. 4 at 2.)

Plaintiff commenced this civil rights action pursuant to 42 U.S.C. § 1983 out of concern over Steven's care and treatment since he became a resident of IRA3 in Rome, New York on October 3, 2011.[1] (Dkt. No. 1 at ¶ 1.) IRA3 is a New York State Department of Health ("NYDOH") Individual Residential Alternative Group Home operated by the New York State Office for People with Developmental Disabilities ("OPWDD") and staffed by the Developmental Disabilities State Office ("DDSO"), Region 2. *Id.* According to Plaintiff, from the time Steven became a resident at IRA3, he has suffered from general neglect and has been denied services recommended by specialists and promised to Plaintiff, including an appropriate wheelchair; appropriate sensory stimulation; appropriate physical, occupational, and speech therapy; development of a communication mechanism; and community inclusion through outings in the local community away from the IRA3 setting. *Id.* at ¶ 8. On December 9, 2013, Steven's arm was broken, allegedly by unnamed staff at IRA3. *Id.*, at ¶ 11. Thereafter, an order was issued stopping all therapy and inclusion activities for Steven. *Id.* at ¶ 14.

N.Y. Comp. Codes R. & Regs. ("NYCRR") Tit. 14, § 633.12 requires agencies providing facilities and community based waiver services to developmentally disabled individuals to develop policies and procedures establishing mechanisms, including administrative hearings, to resolve objections to services. § 633.12(a)(1). Guardians are included among those who may

---

[1] Because familiarity with the October 27, 2014, Order (Dkt. No. 4) setting forth in detail the factual background and the claims being pursued by Plaintiff on behalf of Steven and on his own behalf is presumed, only a brief summary is included herein.

initiate objections. §633.12(a)(4). Plaintiff filed three hearing requests in April of 2014 to address the provision of an appropriate wheelchair; coma stimulation; and physical, occupational and speed therapy for Steven. *Id*. at ¶ 18. The hearing requests were consolidated. *Id*. at ¶ 19. The hearing was not held within the time requirements set forth in § 633.12(a)(8)(*c*). *Id*.

Plaintiff got into a disagreement with the hearing officer during a pre-hearing telephone conference on June 19, 2014, and as a result the hearing was postponed to July 22, 2014. *Id*. at ¶¶ 20, 29. Plaintiff filed a motion for recusal of the hearing officer on June 16, 2014. *Id.* at ¶ 28. Upset over being subjected to what he believed to be arbitrary violations of procedure, Plaintiff submitted appeals on the three hearing requests to the OPWDD Commissioner on June 25 and 26, 2014, without waiting for the hearing to be held and a decision to be issued. *Id*. at ¶ 21. As of the filing of the Complaint in this action, Plaintiff had received no decisions on the appeals, even though decisions are required to be rendered no later than fourteen days after receipt of the appeal. *Id.* at ¶ 21.

On June 12, 2014, Plaintiff also filed a request for a hearing regarding Defendant Todd Podkowka's position that he cannot prescribe anything for Steven that is not FDA approved, and that it would not be paid for by insurance, as well as Johnson's email that all therapies provided "have to be FDA approved, not experimental, medically safe, and ordered by a licensed practitioner." *Id*. at ¶ 23. No hearing date had been set as of the filing of the Complaint. *Id.* at ¶¶ 25-26.

Plaintiff commenced this lawsuit prior to the administrative hearing scheduled for July 22, 2014, on his three consolidated requests. The suit includes challenges to both Defendants' handling of the state administrative procedure and the administrative procedure itself. (*See*

*generally* Dkt. No. 1.)

Defendants in this action are the NYDOH; Laurie A. Kelley ("Kelley"), Acting Director of OPWDD; Kerry A. Delaney ("Delaney"), Acting Director of OPWDD; Mark Lankes ("Lankes"), Director of DDSO, Region 2; Matthew Johnson, RN, Team Treatment Leader Rome Office-BOA; Charles Zelows ("Zelows"), Treatment Team Leader of IRA3; Todd Podkowka ("Podkowka"), Director of Health Services; Kay Romero ("Romero"), Senior Attorney for OPWDD; and David Viggiani ("Viggiani"), hearing officer on Plaintiff's hearing requests.

Plaintiff has asserted claims for violation of Steven's and his own Fourteenth Amendment due process rights under § 633.12; violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*., as amended, by denying Steven appropriate rehabilitation services and materials and denying him community inclusion by keeping him isolated in IRA3[2]; and the Health Insurance Portability and Accountability Act of 1966 ("HIPAA"), 42 U.S.C. § 1320, *et seq*. (Dkt. No. 1 at p. 4.)

The relief sought by Plaintiff includes replacement of 14 NYCRR § 633.12; money damages to Steven for the harm, deprivation, and neglect he has suffered, including harm connected to his fractured arm[3]; money damages to Plaintiff for his expenditures, time, and

---

[2] Plaintiff describes part of his claim under Title II of the ADA as an "Olmstead Act" claim. (Dkt. No. 1 at ¶ 43.) In *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999), the Supreme Court held that unjustified isolation or segregation of qualified individuals through institutionalization is a form of discrimination prohibited under the ADA. *See* 42 U.S.C. §12101(a)(2) (identifying the isolation and segregation of individuals with disabilities as a form of discrimination). The decision was followed by Executive Order 13217, issued by President George W. Bush on June 18, 2001, which called upon the federal government to assist states and localities in the swift implementation of the decision.

[3] Plaintiff seeks damages as a result of the fracture for both Steven and himself in this action despite acknowledging that there is a separate personal injury action pending with regard

4

mental anguish for his efforts as Steven's guardian; making up lost services to Steven, including community outings and providing Steven with the services and rehabilitation measure recommended by Plaintiff and medical specialists; compensatory and punitive damages for the violation of § 1983; and an injunction enjoining Defendants from violating HIPAA and other laws affecting Steven and himself. *Id.* at pp. 26-27.

## II.     Plaintiff's Motion for Appointment of Counsel

Because Plaintiff, who is not an attorney and not represented by counsel, may not appear on behalf of his developmentally disabled son Steven, *see Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990), the Court deferred the requisite initial review of the Complaint pursuant to 28 U.S.C. § 1915(e) and stayed the case for ninety days in order to give Plaintiff time to retain counsel or move for the appointment of counsel.[4]  (Dkt. No. 4 at 3.)

Plaintiff has filed a motion for the appointment of counsel so that he may pursue the litigation on behalf of Steven.  (Dkt. No. 5.)  For reasons explained below, the motion is denied.

### A.     Law Regarding Appointment of Counsel for an Incompetent

An incompetent person normally lacks the capacity to bring suit for himself.  *Berrios v. New York City Hous. Auth.*, 564 F.3d 130, 134 (2d Cir. 2009).  Federal Rule of Civil Procedure Rule 17(c) provides that an incompetent person may be represented by a general guardian, a committee, or a similar fiduciary, *see* Fed.R.Civ.P. 17(c)(1), and that:

---

to the fracture. *Id.* at ¶ 11 and p. 27; Dkt. No. 5 at p. 8.

[4] The Court deferred initial review as to the claims asserted on Steven's behalf as well as those asserted on Plaintiff's own behalf because the claims are intertwined and to some extent derivative, and the Second Circuit has instructed that no issues concerning litigation brought on an incompetent's behalf should be decided until the counsel issue is resolved.  *See Cheung,* 906 F.2d 62.

> an incompetent person who does not have a duly appointed
> representative may sue by a next friend or by a guardian ad litem.
> The court must appoint a guardian ad litem    or issue another
> appropriate order    to protect . . . an incompetent person who is
> unrepresented in an action.

Fed.R.Civ.P. 17(c)(2).  "Thus, as to a claim on behalf of an unrepresented . . . incompetent person, the court is not to reach the merits without appointing a suitable representative." *Berrios*, 564 F.3d at 134.  If the representative of an incompetent person under Rule 17(c) is not an attorney, he or she must be represented by an attorney in order to conduct the litigation.  *Id.* (citing *Wenger v. Canastota Central School Dist*., 146 F.3d 123, 125 (2d Cir. 1998) ("[W]ithout . . . counsel, the case will not go forward at all."), *overruled on other grounds by, Winkelman ex. rel. Winkelman v. Parma City School Dist*., 550 U.S. 533 (2007)).  In *Wenger*, which also involved Plaintiff's attempt to litigate claims on behalf of Steven, the Court found that it was up to the district court whether under the predecessor to Rule 17(c)(2), counsel should be appointed for Steven, and directed the court to examine the issue pursuant to the standards for determining whether to appoint counsel to an indigent person under 28 U.S.C. § 1915(e).  *Wenger*, 146 F.3d at 125.

Although 28 U.S.C. § 1915(e)(1) authorizes the court "to request an attorney to represent any person unable to afford counsel," a civil litigant has no constitutional right to the assistance of counsel.  *See Berrios*, 564 F.3d at 134.  A court may deny a motion to appoint counsel, even for an incompetent, "when it is clear that no substantial claim may be brought on behalf of such a party." *Wenger*, 146 F.3d at 125.  "If it is not clear to the court whether a substantial claim may be asserted on [the incompetent's] behalf, the court should decide whether to appoint counsel, taking into consider[ation] the fact that, without appointment of counsel, the case will not go forward at all." *Id.*; *see also Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170, 172 (2d Cir. 1989)

(appointment of counsel should only be made where the allegations raise a claim that is likely to be of substance).  The complaint should be dismissed without prejudice when no counsel is secured or appointed for the incompetent.  *Berrios*, 564 F. 3d at 135.

In support of his motion, Plaintiff has included correspondence from a number of attorneys whom he has asked to represent Steven's interests in this action.  (Dkt. No. 5 at ¶ A and pp. 6-15.) All have either declined representation or not responded.  *Id*.  Most significant to Plaintiff's motion is a December 17, 2014, letter from Mental Hygiene Legal Service ("MHLS"), Appellate Division, Fourth Department,[5] Senior Attorney Megan E. Dorr, Esq., in response to a request from Plaintiff that the MHLS represent Plaintiff and Steven in lawsuits Plaintiff believes are necessary to protect Steven's rights.  Declining Plaintiff's request, Attorney Dorr wrote:

> Please be advised that MHLS will continue to represent your son and take any action we believe, in our professional judgment, to be in his best interest.  Based upon multiple contacts with Steven, multiple contacts with his service providers, and our review of many records related to the services he is provided, we do not believe any legal action is necessary.

*Id*. at p. 13.

### B.    Analysis of Plaintiff's Request for Appointment of Counsel

Although the allegations in the Complaint, along with litigation Plaintiff has pursued on

---

[5]  "The MHLS provides legal services, advice and assistance to persons receiving care or alleged to be in need of care at inpatient and community-based facilities for the mentally disabled.  Created in 1964 and organized under Mental Hygiene Law Article 47, MHLS represents such persons in judicial and administrative proceedings concerning . . . treatment." (*See*  https://www.nycourts.gov/courtsad4/mhls/mhls-index.html (last visited on April 1, 2015).

Steven's behalf over the years[6], clearly reveal Plaintiff's love and concern for Steven and his

tireless devotion to the care of his son, I find that the Complaint does not warrant appointment of

counsel.[7]

        1.     <u>NYDOH, Kelley and Delaney</u>

Defendant NYDOH is entitled to sovereign immunity under the Eleventh Amendment

with regard to Plaintiff's claims. *See Anghel v. New York State Dept. of Health*, 947 F. Supp. 2d

284, 298 (E.D.N.Y. 2013), *aff'd*, 589 F. App'x 28 (2d Cir. 2015). The Complaint alleges no

personal involvement on the part of OPWDD supervisory officials Acting Directors Kelley and

Delaney in Steven's care and treatment or Plaintiff's hearing requests, as is required for a claim

for money damages under 1983. *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977).

Further, there are no allegations in the Complaint suggesting that Kelley and Delaney, acting in

their official capacities, have the authority to grant Plaintiff's request for injunctive relief

abandoning the administrative procedures set forth in § 633.12 and replacing those with "the

Federal Part 300 and New York Parts 200 Regulations currently in effect by the New York State

Department of Education." (Dkt. No. 1 at p. 25.)

---

[6] Other litigation brought by Plaintiff on Steven's behalf over the years includes *Wenger v. Canastota Cent. School Dist.*, 181 F.3d 84 (2d Cir. 1999) (unsuccessful action against the school district and individual officials under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400, et seq.; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, et seq.; and the due process clause of the Fourteenth Amendment); *Wenger*, 146 F.3d 123 (lawsuit asserting the same claims on Steven's behalf)

[7] My assessment of the claims asserted on behalf of Steven is undertaken solely for the purpose of determining Plaintiff's motion for the appointment of counsel and is not intended as an assessment on the merits of any claims Steven may have against Defendants. Because by Plaintiff's own admission, litigation regarding Steven's broken arm is pending in another forum, I have not considered claims arising out of the fracture.

2.    Title II of the ADA

The allegations in the Complaint regarding Plaintiff's care and treatment, *i.e.*, having an appropriate wheelchair; appropriate sensory stimulation; appropriate physical therapy, occupational therapy, and speech therapy; and community inclusion appear to form the basis of the claim asserted on Steven's behalf under Title II of the ADA. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by any such entity."[8] 42 U.S.C. § 12132. In order to state a claim under Title II of the ADA, a plaintiff must allege that "(1) he or she is a qualified individual with a disability; (2) . . . defendants are subject to the ADA; and (3) that plaintiff was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants by reason of plaintiff's disabilities." *Shomo v. City of New York*, 579 F.3d 176, 185 (2d Cir. 2009) (citation and internal punctuation omitted).

Although Title II of the ADA does not provide for individual capacity suits against public officials, *see Garcia v. State Univ. of N.Y. Health Scis. Ctr.*, 280 F.3d 98, 107 (2d Cir. 2001), a Title II claim can be asserted against a public official in his or her official capacity. *See Keitt v. New York City*, 882 F. Supp. 2d 412, 456-57 (S.D.N.Y. 2011) ("Individuals in their personal capacities are not proper defendants on claims brought under the ADA . . . , although individuals

---

[8] "Services, programs, or activities," not explicitly defined in the ADA have been construed by the Second Circuit as "a catch-all phrase that prohibits all discrimination by a public entity, regardless of the context . . . ." *Innovative Health Sys., Inc. v. City of White Plains*, 117 F.3d 37, 43 (2d Cir. 1997), *superseded on other grounds as recognized by Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 171 n.7 (2d Cir. 2001).

can be sued in their official capacities under [the ADA].") However, under *Garcia*, claims for money damages against state officials in their official capacities under Title II of the ADA are barred by the Eleventh Amendment, absent a showing that a violation was motivated by discriminatory animus or ill will due to the disability. *Id*. at 112. *See, however, Tennessee v. Lane*, 541 U.S. 509, 533-34 (2004) (for an ADA Title II claim to overcome Eleventh Amendment immunity, the Title II claim must implicate a fundamental right under the Fourteenth Amendment). Given the foregoing, Plaintiff cannot assert a Title II of the ADA claim against any of the individual Defendants in their individual capacity and likely would be limited to prospective injunctive relief on official capacity claims.

The allegations in Plaintiff's Complaint show an ongoing dispute between Plaintiff, on the one hand, and Defendants Lankes, Johnson, Zelows, and Podkowka, on the other, regarding Steven's care and the services provided to him at IRA3. (*See generally* Dkt. 1.) The allegations in the Complaint are, however, conclusory in nature. The Complaint provides few specifics regarding Steven's care, the services of which he was allegedly deprived, or programs in which he was allegedly not allowed to participate, or any reasons therefor articulated by Defendants. Those allegations in Plaintiff's Complaint which are specific, such as his allegation regarding Defendant Podkowka's position that he could not prescribe drugs or treatment for Steven that was not FDA approved, *id*. at ¶ 23, and the limitations imposed on Steven's activities by Podkowka and other staff because of his broken arm, *id*. at ¶ 14, do not appear to be sufficient to support a discrimination claim under Title II of the ADA.

### 3. Procedural Due Process Claim

With regard to Plaintiff's Fourteenth Amendment due process claim arising out § 633.12,

Defendant Viggiano, as hearing officer, is likely to be found entitled to absolute immunity with respect to Plaintiff's due process claims. (*See* Dkt. No. 1 at ¶ 21.) *See Butz v. Economou*, 438 U.S. 478, 514 (1978) (absolute judicial immunity extends to officers such as administrative law judges and hearing officers). The immunity has been found to extend to state hearing officers. *See, e.g., Bloom v. NYS Comm'n of Health*, 573 F. Supp. 2d 732, 739 (E.D.N.Y. 2004) (administrative law judge presiding over professional medical conduct bureau is entitled to absolute immunity).

The allegations in the Complaint that Defendant Romero, attorney for OPWDD, usurped the responsibilities of the hearing officer and Defendant Lankes, by performing her "role as it pertains to 14 NYCRR 633.12 [of] assisting appropriate staff with obtaining a hearing officer, scheduling the hearing and preparing the Notice of Hearing" suggest nothing more than that Romero was performing her employment responsibilities. (Dkt. No. 1 at ¶¶ 29-31.) The allegations do not appear to support a due process claim against her.

The allegations against Lankes with respect to the administrative hearing are that he consolidated Plaintiff's hearing request and scheduled the hearings at a later time than allowed under § 633.12; informed Plaintiff that the June 19, 2014, hearing date had been changed to a pre-hearing telephone conference with the hearing officer; and postponed the June 19th hearing date when Plaintiff refused to agree to the hearing ground rules imposed by the hearing officer. *Id*. at ¶¶ 18-20. Those allegations in and of themselves, particularly given Plaintiff's complicity in the hearing delay, appear inadequate to support a denial of due process claim. *Id*. at ¶ 29.

Moreover, the allegations in the Complaint reveal that Plaintiff commenced this lawsuit prior to the administrative hearing scheduled for July 22, 2014. *Id*. at ¶ 29. Although as a

general rule there is no exhaustion of remedies requirement before commencing a § 1983 action,

"to the extent a plaintiff claims a violation of procedural due process under the Fourteenth

Amendment, failure to pursue available procedural remedies can preclude a § 1983 claim."

*Forcucci v. Board of Educ. of Hamburg Central School Dist.*, No. 14-CV-830-A, 2014 WL

5393024, at * 5, 2014 U.S. Dist. LEXIS 150410, at * 12-13 (W.D.N.Y. Oct. 23, 2014) [9] (Arcara,

D.J.) (citing *Rivera-Powell v. N.Y. City Bd. of Elections.*, 470 F.3d 458, 467 n.9 (2d Cir. 2006))

("Where a state law remedy gives a party a meaningful opportunity to challenge the state's

action, he is not deprived of due process simply because he failed to avail himself of the

opportunity.")

Section 633.12 provides for an administrative hearing (§ 633.12(a)(8)(*c*)), an appeal to

the commissioner from the hearing officer's determination (§ 633.12(a)(8)(*d*)), and judicial

review pursuant to N.Y. C.P.L.R. Article 78 (§ 633.12(a)(11)).  While Plaintiff has alleged that

the hearing was not held in a timely manner under the regulation, a hearing had been scheduled

when this action was commenced, and Plaintiff, as Steven's guardian, failed to avail himself of

that hearing and the rights to thereafter appeal to the commissioner and commence an Article 78

proceeding in state court if necessary.  *See New York State Nat'l Org. for Women v. Pataki*, 261

F.3d 156, 169 (2d Cir. 2001) ("[A] procedural due process violation cannot have occurred when

governmental actor provides apparently adequate procedural remedies and the plaintiff has not

availed himself of those remedies.").  Furthermore, while Plaintiff has issues with the manner in

which the administrative procedure was being handled and the administrative procedure itself,

---

[9] A copy of the unpublished decision will be provided to Plaintiff by the Clerk pursuant
to *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

there are no allegations in the Complaint showing that, despite the delay in the hearing, exhaustion was futile. *See Coleman v. Newburgh Enlarged City School Dist.*, 503 F.3d 198, 205 (2d Cir. 2007) ("To show futility, a plaintiff must demonstrate that adequate remedies are not reasonably available or that the wrongs would not have been corrected by resort to the administrative hearing process.") (citation and internal quotation marks omitted).

        4.        <u>HIPAA and Plaintiff's Alleged Right to Determine Steven's Medical Care</u>

Plaintiff alleges in his Complaint that Defendants Lankes, Zelows, and Podkowka have violated Steven's rights under HIPAA and Steven's right, as exercised by Plaintiff as his guardian, to determine his medical care. (Dkt. No. 1 at ¶¶ 44, 53.) As with the other claims, I find that the Complaint does not appear to show the existence of a claim of sufficient substance to warrant appointment of counsel.

Courts addressing the issue have overwhelmingly concluded that there is no private right of action under HIPAA. *See, e.g.*, *Wilkerson v. Shineski*, 606 F.3d 1256, 1267 n.4 (10th Cir. 2010); *Miller v. Nichols*, 586 F.3d 53, 59 (1st Cir. 2009). The allegations in Plaintiff's Complaint with respect to decisions concerning Steven's medical care show a general, ongoing dispute between Plaintiff and Steven's caretakers at IRA3 regarding his medical care and disclosure of medical information. *Id.* at ¶¶ 23, 39, 44-53. According to the Complaint, Lankes' position with regard to Plaintiff's medical care is that "[a]s you have entrusted Steven's physical custody, medical care and overall protective oversight to us at the OPWDD certified residence, we have a responsibility to assure that Steven's health care needs are met." *Id.* at ¶ 48. Plaintiff's position is that as Steven's guardian, he has the right to determine Steven's medical care. *Id*. at ¶ 44.

The two specific instances complained of where Defendants took action with respect to Steven's health care without Plaintiff's consent involved making appointments for Steven at the Joslin Clinic and ENT Clinic at SUNY Upstate. *Id*. at ¶ 45. According to the Complaint, Plaintiff was notified by Zelows that the appointments had been made. *Id*. Plaintiff's complaint is that his approval was not sought ahead of time so that he could consult with the medical professionals before the appointments. *Id*. at ¶ at 46. Plaintiff has not alleged facts showing that the appointments were not in Steven's best interest, that the appointments or other specific actions taken by Defendants with regard to Steven's medical care were injurious to Steven, or that Steven has been injured as a result. *Id*. at ¶¶ 45-53. In fact, Plaintiff claims that whether or not he agrees with particular medical services is irrelevant; that the issue is that he was told of the appointments without having been given the opportunity to conduct the proper investigation and decline the services as Steven's guardian. *Id*. at ¶ 49.

5.      Recommendation of Dismissal of Complaint without Prejudice With Regard to Claims Asserted on Behalf of Steven

Under Second Circuit case law, my denial of Plaintiff's motion for appointment of counsel to represent Steven in this action requires that all claims asserted on Steven's behalf in Plaintiff's Complaint be dismissed without prejudice. *Berrios*, 564 F. 3d at 135 (requiring dismissal of the complaint without prejudice when no counsel is secured or appointed for the incompetent). Therefore, I recommend that the claims asserted on Steven's behalf by Plaintiff be dismissed without prejudice.

## III.  RECOMMENDATION UPON INITIAL REVIEW

### A.  Legal Standard for Initial Review of Complaint

Plaintiff has also asserted claims on his own behalf against Defendants.  Even when, as in this case, a plaintiff meets the financial criteria for *in forma pauperis*, 28 U.S.C. § 1915(e) directs that when a plaintiff proceeds *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B)(i)-(iii).  The Court previously deferred initial review pending resolution of the representation issue.  (Dkt. No. 4.)

In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis either in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  "An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory."  *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (citations and internal quotation marks omitted).  Although extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983), the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed.  *See, e.g., Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991) (*per curiam*) (holding that a district court has the power to dismiss a complaint *sua sponte* if the complaint is frivolous).

To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-harmed-me accusation." *Id*. In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir.), *cert. denied,* 513 U.S. 836 (1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

Where a plaintiff proceeds *pro se*, the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citation omitted). A *pro se* complaint should not be dismissed "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

**B.    Claims Asserted by Plaintiff on his Own Behalf**

In the Complaint, Plaintiff claims that: (1) witnessing Steven's physical and emotional suffering associated with his broken arm and Steven's isolation has caused Plaintiff to suffer emotional harm; and (2) Plaintiff's life has been greatly disrupted by Defendants' actions, and he has expended and continues to expend significant resources in attempting to obtain services and benefits guaranteed to Steven by law.  (Dkt. No. 1 at pp. 24-25.)  Plaintiff seeks compensatory damages for his expenditures and time in connection with his efforts on behalf of Steven and for his mental anguish caused by the harm, deprivation and neglect long endured by Steven.  *Id*. at p. 27.

The Complaint can be construed as an attempt by Plaintiff to pursue his own due process claim under § 1983 relating to the administrative procedure set forth at § 633.12, and his own claim under Title II of the ADA for expenditures made by him to enforce Steven's rights under the provision.  *See, e.g., A.M. ex rel. J.M. v. NYC Dept. of Educ*, 840 F. Supp. 2d 660, 674-675 (E.D.N.Y. 2012) (concluding that under *Winkelman,* 550 U.S. 516, the parent of a child with a disability has standing to pursue claims under the ADA on his own behalf), *aff'd, sub. nom. Moody ex rel. J.M. v. NYS Dept. of Educ*., 513 F. App'x 95 (2d Cir. 2013), *cert. denied*, ___ U.S. ___, 134 S.Ct. 809 (2013).

I recommend that the § 1983 due process and Title II of the ADA claims asserted by Plaintiff on his own behalf be dismissed without prejudice for failure to state a claim, and that the Court, in the exercise of its discretion, decline to exercise supplemental jurisdiction over Plaintiff's state law claim arising out of Steven's broken arm.

1. Due Process Claim

14 NYCRR § 633.12 gives Plaintiff, as Steven's father and guardian, the right to object

on Steven's behalf to a plan of services for his son and sets forth the administrative procedure

available for doing so. However, the Court finds that Plaintiff has failed to state a Fourteenth

Amendment due process claim against Defendants because while the consolidated hearing was

not held in a timely manner, and Plaintiff did not agree with the ground rules imposed by the

hearing officer, there are no allegations suggesting that he was precluded from going through the

administrative process or that doing so would have been futile, particularly given that there was a

hearing scheduled to be held a few days after Plaintiff commenced this lawsuit. Furthermore,

Plaintiff cannot be said to have been deprived of due process simply because he failed to avail

himself of each of the steps of the available administrative procedure. *See Forcucci*, 2014 WL

5393024, at * 5.

2. Claim Under Title II of the ADA

While Plaintiff may have standing to pursue a claim under Title II of the ADA on his own

behalf, he has no claim under Title II of the ADA against the individual defendants in their

individual capacities. *See Garcia*, 280 F.3d at 107. Moreover, there are no allegations in the

Complaint suggesting that Plaintiff's Title II of the ADA money damages claim against

Defendants in their official capacities would not be barred by the Eleventh Amendment. *Id*. In

addition, because of the conclusory nature of the allegations in the Complaint discussed above, I

find that Plaintiff has failed to state a claim on his own behalf under Title II of the ADA.

3.    Plaintiff's Claim for Emotional Distress Damages for Steven's Broken Arm

As previously noted, a separate personal injury action regarding Steven's broken arm is pending in the New York State Court of Claims.  (Dkt. Nos. 1 at ¶ 11; 5 at p. 8.)  In the very unlikely event Plaintiff could be found to have a state law claim for damages for emotional harm suffered by him as a result of witnessing Steven's suffering associated with his broken arm and related isolation, that claim is logically related to Steven's personal injury claim and should be asserted in the pending personal injury action.  Therefore, even if Plaintiff is found by the District Court to have federal claims surviving initial review, I recommend that the District Court, in its discretion, decline to exercise supplemental jurisdiction over Plaintiff's state law claim.  *See Kolari v. New York-Presbyterian Hosp.* 455 F.3d 118, 120 (2d Cir. 2006) (exercise of supplemental jurisdiction under 28 U.S.C. § 1367(a) is discretionary, not a right).

**ACCORDINGLY**, it is hereby

**ORDERED**, that Plaintiff's motion for appointment of counsel (Dkt. No. 5) is **DENIED WITHOUT PREJUDICE**; and it is hereby

**RECOMMENDED**, that the Complaint (Dkt. No. 1) be dismissed without prejudice; and it is hereby

**ORDERED**, that the Clerk serve a copy of this Order and Report-Recommendation on Plaintiff, along with a copy of the unpublished decision in *Forcucci v. Board of Educ. of Hamburg Central School Dist.*, No. 14-CV-830-A, 2014 WL 5393024 (W.D.N.Y. Oct. 23, 2014) in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

19

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: April 17, 2015
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge


Slip Copy, 2014 WL 5393024 (W.D.N.Y.)
**(Cite as: 2014 WL 5393024 (W.D.N.Y.))**

Only the Westlaw citation is currently available.

United States District Court,
W.D. New York.
Catherine Schrauth FORCUCCI and Holly A Balaya,
Plaintiffs,
v.
BOARD OF EDUCATION OF HAMBURG CEN-
TRAL SCHOOL DISTRICT, Defendant.

No. 14–CV–830–A.
Signed Oct. 23, 2014.

Catherine Schrauth Forcucci, pro se.

Holly A. Balaya, pro se.

Andrew J. Freedman, Hodgson Russ LLP, Buffalo,
NY, for Defendant.

**DECISION AND ORDER**
RICHARD J. ARCARA, District Judge.
    *1 This action is brought by plaintiffs Catherine
Schrauth Forcucci and Holly A. Balaya primarily to
allege claims under 42 U.S.C. § 1983 challenging the
constitutionality of an administrative proceeding
during which defendant Board of Education of
Hamburg Central School District found Forcucci
committed official misconduct as a Board member
and removed Forcucci from elected office on the
Board. Plaintiffs Forcucci and Balaya have moved
pursuant to Fed.R.Civ.P. 65 for a temporary restrain-
ing order to enjoin the defendant from filling the
Board seat that had been occupied by Forcucci.
Plaintiffs allege the Board's administrative proceeding
was biased and did not apply the proper legal standard
for determining official misconduct. Plaintiffs are
ultimately seeking a judgment in this case requiring

the Board to reconsider, without biased members and
pursuant to the proper legal standard, whether
Forcucci committed official misconduct.

    For the reasons stated below, after review of the
written submissions of the parties and upon hearing
oral argument on October 22, 2014, the Court denies
the motion for a temporary restraining order. The
Court finds plaintiffs fail to carry their burden to show
a clear likelihood of success on the merits of the §
1983 procedural due process claim, and that plaintiffs
fail to carry their burden to show they will suffer ir-
reparable harm absent entry of the temporary re-
straining order until relief may be granted on their
motion for a preliminary injunction.

    In light of the Court's careful consideration of the
merits of plaintiffs' procedural due process claim, and
in the interest of efficiency and cost savings, the Court
orders below a schedule for submissions pursuant to
Fed.R.Civ.P. 56(f)(3) so that the Court may consider
partial summary judgment on that claim. Plaintiffs'
pending motion for a preliminary injunction may be
rendered moot, and a substantial narrowing of issues
for discovery and trial may be possible.

**FACTS AND PRIOR PROCEEDINGS**
    On May 21, 2013, plaintiff Catherine Schrauth
Forcucci was elected a member of the Board of Edu-
cation of the Hamburg Central School District. *See
generally* N.Y. Educ. Law § 1804. Forcucci was
elected to a three-year term of office that was sched-
uled to expire June 30, 2016.

    On May 2, 2014, Forcucci was served with
charges of official misconduct as a Board member. A
school board is authorized:

    [t]o remove any member of their board for official

misconduct. But a written copy of all charges made of such misconduct shall be served upon him at least ten days before the time appointed for a hearing of the same; and he shall be allowed a full and fair opportunity to refute such charges before removal.

NY. Educ. Law § 1709(18).

On May 14, 2014, Forcucci filed a petition with the New York Commissioner of Education pursuant to N.Y. Educ. Law § 310 seeking disqualification of the President of the Board from consideration whether the charge of official misconduct against plaintiff should be lodged before the Board, and from consideration of the charge because of alleged bias against plaintiff. The administrative petition to disqualify the President of the Board remains pending before the Commissioner of Education.

*2 On September 10, 2014, Forcucci was removed from her remaining term of office as a member of the Board for official misconduct by a 5–1 vote of Board members. The vote followed a lengthy administrative hearing pursuant to N.Y. Educ. Law § 1709(18) before the Board.

After the Board voted to remove Forcucci from the Board, she filed this action on October 2, 2014, in Supreme Court, State of New York, County of Erie, to overturn the Board's removal decision, for remand to the Board with proper reconsideration by the Board whether plaintiff committed official misconduct, and for various other relief. Plaintiff alleges that some Board members were so biased that the failure to disqualify them from the removal proceedings violated her due process rights. Plaintiff Forcucci also alleges the Board was not advised of the correct standard to be used to determine whether she had committed "official misconduct" under Education Law § 1709(18).

On October 3, 2014, Forcucci filed an adminis-

trative appeal of the Board's September 10, 2014 removal decision with the New York Commissioner of Education pursuant to N.Y. Educ. Law § 310. Although plaintiff has not done so, she has a right to seek a stay of the Board's removal decision pursuant to N.Y. Educ. Law § 311 and 8 NYCRR § 276.1.

The Board removed this case from Supreme Court, County of Erie, to this Court on October 7, 2014 pursuant to 28 U.S.C. § 1441. The case was removable because it arises within the Court's federal-question jurisdiction under 28 U.S.C. § 1331 and could have been brought here in the first instance.

Plaintiffs Forcucci and Balaya filed a motion pursuant to Fed.R.Civ.P. 65 for a temporary restraining order and a preliminary injunction on October 15, 2014. The motion seeks to enjoin the Board from filling the seat from which Forcucci was removed pending this Court's ruling on plaintiff's § 1983 claim that she suffered constitutionally-inadequate procedural due process during the Board's administrative proceeding on the allegations she committed official misconduct.[FN1]

FN1. Plaintiff Bayala does not assert the § 1983 procedural due process claim upon which plaintiffs' motion for injunctive relief is predicated. Balaya appears to lack standing to assert the procedural due process claim of plaintiff Forcucci. *See* Dkt. No. 12, ¶ 1.

**DISCUSSION**

The Fourteenth Amendment to the United States Constitution provides:

... nor shall any State ... deprive any person of life, liberty or property, without due process of law ....

U.S. Const. amend XIV § 1. Plaintiff Forcucci argues her due process rights under the Fourteenth Amendment were violated when the administrative

Slip Copy, 2014 WL 5393024 (W.D.N.Y.)
**(Cite as: 2014 WL 5393024 (W.D.N.Y.))**

proceeding that resulted in her removal from the Board included unlawfully biased members of the Board and when the Board was not instructed on a legally accurate definition of the "official misconduct" standard of decision to be applied during the Board's deliberations. Plaintiff claims these alleged violations of her due process rights irreparably harm her and are contrary to the public interest.

The Board argues in response that Forcucci has been, and is, receiving all the legal process she is due. Defendant argues plaintiff has neither a property right, nor a statutory entitlement, to the elected office of Board member, and that plaintiff therefore lacks an interest in the office that is protected by her personal right under the Fourteenth Amendment to procedural due process. Defendant also argues plaintiff's claim is barred because she has failed to exhaust administrative remedies available to her.

**Standard for a Temporary Restraining Order.**
**\*3** A temporary restraining order of the kind Forcucci and Balaya seek is an "extraordinary and drastic remedy." *Moore v. Consol. Edison Co.,* 409 F.3d 506, 510 (2d Cir.2005) (quoting *Mazurek v. Armstrong,* 520 U.S. 968, 972, 117 S.Ct. 1865, 138 L.Ed.2d 162 (1997)) (internal quotation marks omitted). Such a temporary restraining order pursuant to Fed.R.Civ.P. 65 may only be issued when plaintiffs have clearly established a likelihood of success on the merits of plaintiff's claims and that: (1) they are "likely to suffer irreparable injury in the absence of an injunction"; (2) "remedies at law, such as monetary damages, are inadequate to compensate for that injury"; (3) the balance of hardships tips in their favor; and (4) "the 'public interest would not be disserved' by the issuance of [injunctive relief]." *Salinger v. Colting,* 607 F.3d 68, 80 (2d Cir.2010) (referring to identical preliminary injunction standard; citing *eBay, Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 391, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006)).[FN2]

> FN2. Because plaintiffs seek to enjoin the

Board from a public-interest requirement to fill the vacant seat on the Board that is imposed on the Board by N.Y. Educ. Law § 1709(17), plaintiffs are required to show a clear likelihood of success on the merits, and may not rely on a claim of having a fair ground for litigation and a favorable balance of equities to justify a temporary restraining order. *See e.g., Monserrate v. New York State Senate,* 599 F.3d 149, 154 (2d Cir.2010).

**Likelihood of Success on the Merits.**
It is firmly settled that the threshold question in any section 1983 case alleging a due process violation is whether the plaintiffs possessed a liberty or property interest. *See e.g., Leroy v. New York City Bd. of Elections,* 793 F.Supp.2d 533, 537 (E.D.N.Y.2011); *see White Plains Towing Corp. v. Patterson,* 991 F.2d 1049, 1061–62 (2d Cir.1993) ("In order to succeed on a claim of deprivation of procedural due process, a plaintiff must establish that state action deprived him of a protected property or liberty interest.") (citing *Mathews v. Eldridge,* 424 U.S. 319, 332, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)). Therefore, the Court must first address whether plaintiff Forcucci had a property-like entitlement to the term of office on the Board.

**Whether a school board seat is an entitlement.**
Positions on a school board are "public offices [that] are mere agencies or trusts, and not property as such .... [G]enerally speaking, the nature of the relation of a public officer to the public is inconsistent with either a property or a contract right." *Velez v. Levy,* 401 F.3d 75, 86–87 (2d Cir.2005), (quoting *Taylor and Marshall v. Buckham,* 178 U.S. 548, 577, 20 S.Ct. 890, 44 L.Ed. 1187 (1900)). *See also Snowden v. Hughes,* 321 U.S. 1, 7, 64 S.Ct. 397, 88 L.Ed. 497 (1944) ("an unlawful denial by state action of a right to a state political office is not a denial of a right of property ... secured by the due process clause.") Under the Second Circuit's decision in *Velez,* Forcucci has no property-like interest in the elected office of school board member and fails to have a viable claim

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2014 WL 5393024 (W.D.N.Y.)
**(Cite as: 2014 WL 5393024 (W.D.N.Y.))**

for a § 1983 procedural due process violation, let alone a likelihood of success on the merits of such a claim.

During oral argument, Forcucci relied upon a different statutory entitlement to the office of Board member as the basis for her claimed Fourteenth Amendment right to procedural due process. *See Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). She argued her situation is clearly distinguishable from that of the disappointed school board member in *Velez* because plaintiff's right in N.Y. Educ. Law § 1709(18) to an administrative hearing and a finding of "official misconduct" before removal from office by the Board provides significantly greater procedural protection than was afforded the disappointed board member in *Velez.* In *Velez,* the board member was lawfully removed "for cause" pursuant to N.Y. Educ. Law § 2590–l(1) without a statutory right even to an administrative hearing before removal. 401 F.3d at 81–82, 85–87. Plaintiff argues the particular statutory grant of procedural protection in N.Y. Educ. Law § 1709(18) establishes that the New York Legislature intended her to have an full-fledged property-like entitlement to the office of board member, and that the entitlement clearly triggers her Fourteenth Amendment procedural due process rights.

**\*4** The Board characterizes Forcucci's statutory-entitlement argument as circular. Thus, the Board argues, the Court should not find plaintiff is entitled to even more procedural protection—including adjudication of a § 1983 procedural due process claim—merely because New York decided to afford the office of school board member a pre-removal administrative hearing before the board governed by an "official misconduct" standard of decision.

Forcucci's argument is not so totally far-fetched, at least in some respects. As an elected member of the Board, she could only properly be removed by the Board after a "full and fair opportunity to refute"

charges of official misconduct. N.Y. Educ. Law § 1709(18). The New York Commissioner of Education had jurisdiction concurrent with that of the Board to remove plaintiff. *See Komyathy v. Board of Ed. of Wappinger Central School Dist. No. 1,* 75 Misc.2d 859, 348 (1973) (citing N.Y. Educ. Law §§ 306(1), 1706, and 2559). These are, as plaintiff stresses, legal limits grounded in State law on administrative discretion to remove plaintiff from the term of office on the Board.

However, plaintiff Forcucci overlooks some of the most critical aspects of the question whether her term of office as a Board member was a property-like entitlement for Fourteenth Amendment purposes. That question,

despite its state-law underpinnings, is ultimately one of *federal constitutional law.* "Although the underlying substantive interest is created by 'an independent source such as state law,' federal constitutional law determines whether that interest rises to the level of a 'legitimate claim of entitlement' protected by the Due Process Clause." *Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1, 9, 98 S.Ct. 1554, 56 L.Ed.2d 30, (1978) (quoting *Roth, supra,* at 577; emphasis added); *cf. United States ex rel. TVA v. Powelson,* 319 U.S. 266, 279, 63 S.Ct. 1047, 87 L.Ed. 1390 (1943).

*Town of Castle Rock v. Gonzales,* 545 U.S. 748, 756, 125 S.Ct. 2796, 162 L.Ed.2d 658 (2005). Plaintiff identifies no basis for her claim of entitlement to a Board seat other than the state-law right to a pre-removal hearing governed by an "official misconduct" standard in Educ. Law § 1709(18). Forcucci's reference to those hearing rights alone is insufficient to carry her threshold burden to show an interest protected by Fourteenth Amendment procedural due process.

In a somewhat related context, the Second Circuit

Slip Copy, 2014 WL 5393024 (W.D.N.Y.)
**(Cite as: 2014 WL 5393024 (W.D.N.Y.))**

has held explicitly that "mere existence of *procedures* ... do not, in and of themselves create constitutional 'property interests.' " *Zahra v. Town of Southold,* 48 F.3d 674, 681–82 (2d Cir.1995) (emphasis in original). To hold otherwise would potentially open federal courts to claims of "endless numbers" of property-like statutory entitlements arising not from genuine entitlements, but as a consequence only of pre-existing procedural protections. *Id.*

For the foregoing reasons, the Court finds, consistent with the Second Circuit's holding in *Velez,* that plaintiffs fail to carry their burden to establish a likelihood of success on the merits proving a threshold personal interest protected by procedural due process. The motion for a temporary restraining order is therefore denied.

**Whether legal process that is available is inadequate.**

**\*5** Defendant Board argues that plaintiffs' also fail to show a likelihood of success because plaintiffs' § 1983 claim will be barred by plaintiffs' failure to exhaust administrative remedies. In particular, defendant notes Forcucci could have sought an administrative stay of her removal from the Board with the petition for review of the Board's decision she filed with the Education Commissioner on October 3, 2014. N.Y. Educ. Law § 311 and 8 NYCRR § 276.1. As the Court noted during oral argument, plaintiff will have a right to judicial review of her removal in an Article 78 summary administrative review proceeding in a New York court. These may well be adequate procedural remedies for Fourteenth Amendment purposes.

Plaintiffs argue they were not required to exhaust administrative remedies before bringing their § 1983 claim. It is generally true that there is no exhaustion of remedies requirement that must be met before a § 1983 claim can be brought in federal court. *See e.g., Kraebel v. N.Y. City Dep't of Housing Preservation and Dev.,* 959 F.2d 395, 404 (2d Cir.1992) ("It is well-established that § 1983 generally allows plain-

tiffs with federal or constitutional claims the right to sue in federal court without first resorting to state judicial remedies or state administrative remedies." (internal citations omitted)). However, to the extent a plaintiff claims a violation of procedural due process under the Fourteenth Amendment, failure to pursue available procedural remedies can preclude a § 1983 claim. *See Rivera—Powell v. New York City Bd. of Elections,* 470 F.3d 458, 467 n. 9 (2d Cir.2006) ("Where a state law remedy gives a party a meaningful opportunity to challenge the state's action, he is not deprived of due process simply because he failed to avail himself of the opportunity." (internal quotation marks and brackets omitted)).

While exhaustion of administrative remedies is technically not required to state a procedural due process claim under § 1983, "[w]hen § 1983 claims allege procedural due process violations," courts assess the availability of such remedies, "because that inquiry goes to whether a constitutional violation has occurred at all." *Chase Grp. Alliance LLC v. City of N.Y. Dep't of Fin.,* 620 F.3d 146, 153 (2d Cir.2010). "[A] procedural due process violation cannot have occurred when the governmental actor provides apparently adequate procedural remedies and the plaintiff has not availed himself of those remedies." *New York State Nat'l Org. for Women v. Pataki,* 261 F.3d 156, 169 (2d Cir.2001) (emphasis added) (internal quotation marks omitted). Here, Forcucci could have sought a stay of defendant Board's removal ruling when seeking to have it overturned by the State Commissioner of Education, and failed to do so. N.Y. Educ. Law § 311; 8 NYCRR § 276.1. In addition, she can bring an Article 78 proceeding for administrative review, at least after the Commissioner renders a decision on her petition.

**\*6** Moreover, even if the Court were to assume for the sake or argument that Forcucci had property-like statutory entitlement to a Board office sufficient to qualify for Fourteenth Amendment procedural due process protection, plaintiffs fail even to carry

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2014 WL 5393024 (W.D.N.Y.)
**(Cite as: 2014 WL 5393024 (W.D.N.Y.))**

their burden to show how the allegedly flawed pre-removal § 1709(18) process plaintiff Forcucci received before the Board found official misconduct, together with the post-removal process she has available under State law in her appeal to the Commissioner, followed by an Article 78 proceeding, are somehow inadequate legal process under the Fourteenth Amendment. If the Court were to assume plaintiff had a cognizable interest in the Board office, to determine properly what process might be due to plaintiff, the Court would consider:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Rivera–Powell,* 470 F.3d at 466 (quoting *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18, (1976)). Because plaintiffs fail even to take up their burden to establish it is likely the Court would find that more legal process is due Forcucci, they fail to show a likelihood of success on the merits.

**Whether irreparable harm will occur before a preliminary injunction may be entered, and the public interest.**

Plaintiffs rely exclusively upon their claim of a constitutional-rights injury to support their claim of alleged irreparable harm. Because, for the reasons stated above, they fail to establish a likelihood of success at proving such an injury, the Court finds they also fail adequately to establish an irreparable injury that could justify the extraordinary remedy of a temporary restraining order.

Plaintiffs' counsel maintained during oral argu-

ment that failure to enjoin the Board from filling the Board office plaintiff Forcucci formerly occupied will severely harm the public interest. Counsel maintain that the will of the voters who elected Forcucci to the term of office as a member of the Board has been overborne by the procedural irregularities during the proceedings resulting in Forcucci's removal from the Board.

The Court does not address plaintiffs' public-interest arguments at this time. The Court does note, to paraphrase the Second Circuit, if persons entitled merely to municipal hearings can invoke federal jurisdiction on § 1983 claims alleging that a body acted arbitrarily and in violation of Fourteenth Amendment procedural due process rights, even though the state provides extensive legal redress, federal courts could face "endless numbers" of such cases. *See Zahra,* 48 F.3d 674, 681–82 (2d Cir.1995) (quoting *Yale Auto Parts, Inc. v. Johnson,* 758 F.2d 54, 58–59 (2d Cir.1985) (citation omitted)). The potential increase of such cases filed in federal court could violate principles of federalism and lead to unnecessary federal-state conflicts with respect to governing principles in areas that are of primary state concern. *Id.*

**\*7 Whether summary judgment should be entered.** Upon consideration of the merits of plaintiffs' procedural due process claim, it appears that facts material to that claim may be undisputed and that judgment may be proper as a matter of law. Accordingly, in the interest of efficiency and cost savings, the Court hereby notifies the parties it may consider summary judgment on the First Cause of Action of plaintiff Forcucci. It appears the only fact material to the threshold legal question whether plaintiff had a property interest or property-like entitlement to a seat on the Board subject to Fourteenth Amendment protection is that plaintiff was the member of the Board subject to the official misconduct proceedings that culminated in the vote of Board members for removal on September 10, 2014.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2014 WL 5393024 (W.D.N.Y.)
**(Cite as: 2014 WL 5393024 (W.D.N.Y.))**

On or before November 7, 2014, plaintiffs shall file a submission listing in separately numbered paragraphs each and every other fact, if any, they contend are material to the legal question whether plaintiff Forcucci had a property interest or property-like entitlement to a seat on the Board subject to Fourteenth Amendment procedural due process protection. Plaintiff Forcucci shall also indicate whether she contends any such fact is genuinely in dispute, and why.

On or before November 7, 2014, plaintiffs shall also file a memorandum of law addressing whether the Court should grant summary judgement pursuant to Fed.R.Civ.P. 56 on plaintiff Forcucci's First Cause of Action on the ground plaintiff has no property interest or property-like entitlement to a seat on the Board subject to Fourteenth Amendment procedural due process protection.

On or before November 21, 2014, defendant Board shall file a submission listing in separately numbered paragraphs each and every other fact, if any, it contends is material to whether plaintiff Forcucci had a property interest or property-like entitlement to a seat on the Board subject to Fourteenth Amendment procedural due process protection. Defendant shall indicate whether it contends any such fact is genuinely in dispute, and shall also respond to the November 7, 2014 list of facts filed by plaintiffs by explaining whether it contends any such fact is material and not genuinely in dispute.

On or before November 21, 2014, defendant Board shall also file a memorandum of law addressing whether the Court should grant summary judgement pursuant to Fed.R.Civ.P. 56 on plaintiff Forcucci's First Cause of Action on the ground plaintiff has no property interest or property-like entitlement to a seat on the Board subject to Fourteenth Amendment procedural due process protection.

**CONCLUSION**

For the foregoing reasons, the Court denies the motion of plaintiffs Catherine Schrauth Forcucci and Holly A. Balaya pursuant to Fed.R.Civ.P. 65 for a temporary restraining order enjoining defendant Board of Education of Hamburg Central School District from filling a school board seat previously occupied by Forcucci. The parties shall confer on a schedule for proceedings on plaintiffs' pending motion for a preliminary injunction and defendant Board's response to the Complaint before October 28, 2014, and shall appear for a scheduling conference on October 28, 2014 at 9:00 a.m.

**\*8 SO ORDERED.**

W.D.N.Y.,2014.
Forcucci v. Board of Educ. of Hamburg Central School Dist.
Slip Copy, 2014 WL 5393024 (W.D.N.Y.)

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.